**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DICAMBA HERBICIDES | ) | Main Case 1:18-md-2820-SNLJ |
| LITIGATION | ) | Indiv. Case 1:21-cv-00104-SNLJ |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION TO REMAND TO JEFFERSON COUNTY, TEXAS

## I.     Introduction

Plaintiffs in *Andy Timmons, Inc. d/b/a Lost Draw Vineyards, et al. v. Bayer Crop Science, LP et al.*, 1:21-cv-00104-SNLJ, are fifty-seven (57) vineyard owners, and four related entities, with a shared identity: each plaintiff grows the same crop (wine grapes) in the same region of Texas (the High Plains) and has suffered the same damage caused by the same product (the Bayer-Monsanto/BASF dicamba-tolerant seed system) from the same source (the region's 2 million acres of dicamba-resistant cotton).     These commonalities are alleged in Plaintiffs' petition, which only contains state-law claims.

When Plaintiffs sued Bayer Crop Science, LP, Monsanto Company, and BASF Corporation, they did so in the forum of their choice (Texas state court) in a proper venue (Jefferson County).     Jefferson County is home to BASF's nationwide dicamba manufacturing facility, where it makes dicamba herbicide.   There is no complete diversity because one of the largest vineyard-owner-plaintiffs, Hilltop Winery at Paka Vineyards, LLC, has members that share New Jersey citizenship with defendant BASF.   Despite the Paka's New Jersey citizenship, the Texas High Plains vineyard they own is located at the geographic epicenter of the plaintiff grower group and ranks among the top five vineyards by acreage of the plaintiff group's roughly 3,000 total acres of wine grapes.   Each plaintiff vineyard is located roughly within an hour's drive from Lubbock, Texas.

A combination of weather conditions that favor volatility and extreme loading of dicamba-resistant cotton plantings and spraying in the region (dubbed the "largest cotton patch in the world") has led to a dicamba cloud blanketing the part of the Texas High Plains where Plaintiffs' vineyards are located.   As this cloud has come in contact with the region's

grape vines – among the most sensitive of all specialty crops – the results have been catastrophic.  The same classic dicamba symptomology (cupped vine leaves) can be found on every vine, in every plaintiff vineyard, from one end to the next.

Amidst this backdrop, Defendants removed Plaintiffs' case to federal court – not based on a federal question, because there is none – but on the dubious doctrine of fraudulent misjoinder in an effort to disregard the lack of complete diversity.  Unlike some of its sister circuits, the Eighth Circuit has never expressly accepted the Eleventh Circuit's decision in *Tapscott* (the genesis of the fraudulent-misjoinder doctrine).  And while some district courts in this circuit have entertained arguments based on the doctrine, these efforts have been almost uniformly rejected.

Even if the Court were to consider the doctrine, Defendants fall well short of being able to prove mere misjoinder, let alone the *egregious* pleading conduct required to disregard the lack of complete diversity and keep this case in federal court.  As this Court remarked in *Orrick*, where plaintiffs, such as here, are each alleged to have been injured by the same product arising from the same product, common questions of law and fact are likely to arise that are more than sufficient to present a "palpable connection" sufficient to vitiate a fraudulent misjoinder argument.

Because there is no federal question and no complete diversity, there is no basis for federal jurisdiction.  This matter should be remanded back to Jefferson County, Texas.

## II.     Procedural History

Plaintiffs filed this case in Jefferson County, Texas.  (#4, 1:21-cv-00104-SNLJ). BASF filed a notice of removal on July 2, 2021.  (#1, 1:21-cv-00104-SNLJ).  That same

2

day, BASF filed a motion to sever the claims of a non-diverse plaintiff (Paka).[1]  (#2, 1:21-cv-00104-SNLJ).  The case was initially docketed as case 1:21-cv-00338-MJT in the U.S. District Court for the Eastern District of Texas.  At the parties' request, the Texas federal court stayed this case pending the MDL transfer.  (#7, #10 1:21-cv-00104-SNLJ).

The Judicial Panel on Multidistrict Litigation subsequently entered a conditional transfer order (CTO-17) finalized on July 16, 2021.  (#11, 1:21-cv-00104-SNLJ).  Receipt of the case in MDL 2820 was acknowledged by this transferee Court that same day.  (#593).

## III.   Plaintiffs' Allegations

In their petition, Plaintiffs pleaded four state-law causes of action: strict liability-design defect (Count I), negligent design (Count II), punitive damages as to Bayer-Monsanto (Count III), and punitive damages as to BASF (Count IV).  (#4 ¶¶ 147-169, 1:21-cv-00104-SNLJ).  As highlighted below, Plaintiffs' allegations assert a joint right to relief based on the same series of occurrences featuring common questions of both law and fact.

*First*, in terms of common questions of law, every Plaintiff asserts the same causes of action against the same trio of defendants (Bayer Crop Science, LP, Monsanto

---

[1]  The briefing schedule on the motion to sever is expected to be discussed during a conference with the Court on August 4, 2021.  Suffice to say Plaintiffs oppose severance for the same reasons discussed in this memorandum.  Defendants concede Paka is a non-diverse plaintiff.  Because Paka's inclusion is not a product of fraudulent misjoinder, remand of the entire action is required.  This Court cannot sever the Paka claim unless it has a proper basis for jurisdiction.  Defendants' suggestion that this MDL is the superior vehicle to achieve litigation-related efficiencies cannot create federal jurisdiction where there is none.  And contrary to Defendants' suggestion, (1) Plaintiffs' causes of action are not part of the Master Crop Damage Complaint in the MDL – to date, no Texas causes of action have been included, and (2) as set forth in the MCL 4th (2004) at § 22.4, coordination between federal and state mass tort proceedings is common.  Were Defendants' arguments concerning efficiencies and judicial economy to carry the day, the very existence of a federal MDL could supplant Congress' will that federal courts be courts of limited jurisdiction.  *See In re: Xarelto*, 2016 WL 4409555, at *7 ("MDL's efficiency interests cannot supplant both a plaintiff's strategic interests in joining defendants as well as deference to a plaintiff's choice of forum.").

Company, and BASF Corporation).  (#4, 1:21-cv-00104-SNLJ).  They also seek the same categories of damages in their prayer for relief.  (*Id.* at 38); *see also id.* ¶¶ 151, 160 (each plaintiff is seeking "(a) lost yields of grape from their vineyards, (b) reduced quality of grapes produced from their vineyards, and (c) lost value of their vineyards").

*Second*, in terms of common questions of fact, at the core of each Plaintiff's claim is the notion that Defendants' defectively designed dicamba-resistant seed system and negligence injured a Texas High Plains vineyard.  This means that, as pleaded, the same defective product, developed by the same Defendants, impacted the same type of specialty crop, from the same sources throughout the same region.  Collectively, the plaintiffs have a common regional identity.  As expressly pleaded their petition:

*Common Location*

¶75  Plaintiffs are the owners and operators of fifty-seven (57) vineyards, and four related processors, in the Texas High Plains near Lubbock, Texas whose businesses have been devastated by dicamba.

¶75  As one expert with the Texas A&M Agrilife Extension Service has estimated, 90-95% of the grape vines in the Texas High Plains have been damaged.

¶129  After Bayer Acquired Monsanto, it opened a new $16.7 million seed processing plant in Lubbock to increase its sales of dicamba-resistant cotton seed in the Texas High Plains, often called the "Cotton Patch of the World."

¶132  Over 85% of all the wine grapes grown in Texas are grown within one hour of Lubbock in the High Plains.

¶135  [T]exas wine grapes are grown in and around the same agricultural areas where dicamba-resistant cotton—the predominant crop in the High Plains Region—is being utilized.  Currently, over two-thirds of the 3 million acres of cotton grown in the Texas High Plains are planted with dicamba-resistant seed.

¶139  Defendants intentionally set their sights on the High Plains, which is a unique farming environment.  The same geography and weather that makes the High

Plains an ideal location for growing cotton, grapes, and other crops, also makes the area especially vulnerable to dicamba volatilization and off-target movement.

*Common Product*

¶73    The claims against Bayer and Monsanto arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims against BASF.  In particular, and as alleged herein, Bayer-Monsanto and BASF entered into a joint venture to develop a dicamba-resistant seed system to which dicamba-based herbicides could be applied.

¶74    BASF entered into a joint venture with Monsanto to design, develop and market the dicamba-based seed system.

*Common Exposures*

Intro.  One of the largest cotton patches in the world is in the Texas High Plains near Lubbock.  Monsanto and BASF's dicamba-based seed system has become widely used in the region, with more than two million acres planted.  Thus, every summer when cotton farmers have dicamba applied over the top of their dicamba resistant crops, a massive cloud of dicamba covers the High Plains.

Intro.  The cloud of dicamba that now covers the High Plains each summer has crippled what was an award-winning and rapidly growing industry.

¶136   Because of the millions of acres of cotton fields in the Texas High Plains, much of which are now planted with Monsanto's Xtend cotton seeds, each summer now results in a massive cloud of drifting and volatilized dicamba that covers the entire High Plains (and all 57 vineyards) as dicamba volatilizes and drifts from hundreds if not thousands of different cotton fields in the High Plains.

¶136   Once sprayed, volatilized or drifting dicamba can travel for many miles before falling on plants.  The dicamba cloud is particularly prevalent and intense in the parts of Terry, Lubbock, Hockley, Yoakum, and Floyd Counties where the Plaintiffs' vineyards are located—all within the same 100-mile radius.  At any given time, millions of pounds of the herbicide can be suspended over the region.

¶138   Defendants' dicamba-based herbicides used as part of the dicamba-based seed system have volatilized and drifted throughout Lubbock, Hockley,

Terry, Floyd, and Yoakum Counties, where the Plaintiffs' vineyards are located.

*Common Impact*

Intro. Dicamba damage on grapevines in the High Plains was unheard of prior to the release of Monsanto and BASF's dicamba-based seed system.  Now it can be found throughout every portion of every vineyard in the region.

Intro. Leaves deform, cup, and shrink—and soon the plant stops growing.  And when vines get hit with dicamba many times a year, for multiple years, the results are disastrous—stunted development, significantly reduced yields, poor quality grapes, and, eventually vine death.  Over the past few years, this is exactly what has happened in the High Plains.

Intro. The vineyards have seen their production fall dramatically, and what grapes do grow are often rejected for poor quality.  Contracts have been cancelled, winemakers have had to seek grapes elsewhere, and a stigma has attached to the region.

146   There is nothing growers can do to stop these clouds of dicamba from injuring their vines.  All they can do is sit and watch.

Apart from these common questions set forth in Plaintiffs' allegations, Plaintiffs

have sufficiently pleaded a lack of complete diversity.[2]  As pleaded in the petition:

¶35   Plaintiff Hilltop Winery at Paka Vineyards, LLC is a Texas limited liability company with its principal place of business in Demarest, Bergen County, New Jersey.  Hilltop Winery at Paka Vineyard, LLC's members include Kumar and Renuka Paka, who reside in Demarest, New Jersey.  Kumar and Renuka Paka are both domiciled in the State of New Jersey.

¶65   Defendant BASF Corporation is a corporation organized and existing under the laws of the State of Delaware.  BASF Corporation's principal place of business is located at 100 Park Avenue, Florham Park, New Jersey 07932.

¶70   This case is not removable to federal court because none of Plaintiffs' claims raise a federal question.  Additionally, diversity jurisdiction does not exist because there is not complete diversity of citizenship.  In particular, Plaintiff Hilltop Winery at Paka Vineyards, LLC and Defendant BASF are both

---

[2] *See also* Ex. 1 (Business Organizations Inquiry for Hilltop Winery at Paka Vineyards, LLC reflecting Demarest, New Jersey addresses for LLC members Kuma and Renuka Paka).

citizens of New Jersey.  Plaintiff Hilltop Winery at Paka Vineyards, LLC shared in the same exposure events as the other Plaintiffs in this suit.

Together, these allegations show that Plaintiffs' petition does not invoke federal jurisdiction. Nor does it reflect an egregious or abusive instance of joinder.

## IV.    Factual Background

In addition to the allegations set forth above, Plaintiffs offer the following additional facts in support of remand.[3]

*Common Location*

Each plaintiff vineyard is located roughly within an hour's drive of Lubbock, Texas. For context, the primary GPS position for each of the fifty-seven (57) plaintiff vineyards is attached as Exhibit 2.[4]  *See also* Ex. 3 (reflecting these GPS positions in Google Earth, with Paka marked with a white colored pin).

Specifically, the Paka vineyard is located approximately 10 miles west of Brownfield, Texas, near the geographic epicenter of the plaintiff group.  You can see where each of the fifty-seven (57) Plaintiff vineyards are in the map below (the star is Paka):

---

[3] While "jurisdiction is measured at the time of removal" for remand purposes, the Eighth Circuit has held that post-removal evidence can inform a reviewing court's jurisdictional determination regarding the "facts bearing on the issues."  *See Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964-65 (8th Cir. 2016).  Case law in this district suggests a willingness to review post-removal evidence on issues of joinder.  *See, e.g., Jones v. Chas. S. Lewis & Co., Inc.*, 4:08-cv-0259-TCM, 2008 WL 2775705, at *1, *3 (E.D. Mo. July 14, 2008); *Schroeder v. Schape Fitness, Inc.*, 4:17-cv-2943-SNLJ, 2018 WL 2432954, at *2 (E.D. Mo. May 29, 2018).

[4] Defendants' suggestion that Plaintiffs' vineyards could be spread across an area the size of Kentucky (#2 at 7, 1:21-cv-00338) is disingenuous.  *First*, the fifty-seven vineyards at issue are clustered around the contiguous counties described in Plaintiffs' petition – they are not spread across the entire High Plains region.  *Second*, Defendants know exactly where the Plaintiff vineyards are in relation to one another because they visited every single one.  Defendants were provided the GPS data for each vineyard, and they have had a chance to inspect each one in-person.



Exs. 4, 5. (Maps).  A far cry from a geographic outlier that was fraudulently added to destroy diversity, the Paka vineyard is right in the middle.

*Common Exposures*

One need not look further than Defendants' internal documents for confirmation that dicamba can move off site from a multitude of dicamba-resistant crop sources and cover fields across an entire region.  As a BASF field representative, Jason Roberts, wrote "The one thing most acres of beans have in common is dicamba damage.  There must be a huge cloud of dicamba blanketing the Missouri Bootheel."  Ex. 6.  This is exactly what Plaintiffs have alleged has occurred (and is occurring) on the Texas High Plains.  As millions of acres of dicamba-resistant cotton are sprayed with dicamba each growing season, a cloud of dicamba blankets the counties where Plaintiffs' vineyards are located.  Thus, because there is regional aggregation, there are necessarily shared exposures.

This same concept of shared regional exposure can be found in the scientific literature.  For example, in a recent article from the Weed Science Society of America

discussing dicamba, the authors note that "pesticides moving off target in large quantities is not a novel concern."  Ex. 7.  "Commercial introduction of crops with dicamba-resistant traits and subsequent off-target movement of dicamba herbicide is [but] the most recent example of large-scale pesticide movement.  *Id.* at 1.  The authors specifically mention historical observations of "air mass" damage – meaning "damage referred to large areas where consistent herbicide injury symptoms appeared on the sensitive crop without a definable gradient and was speculated to be the result of a large, contaminated cloud passing through the area (Robinson and Fox 1978)."  *Id.* at 1-2.  Again, this experience of growers across a region being similarly affected by the same cloud of pesticide is a common fact each plaintiff vineyard has pleaded here.

Finally, authoritative texts such as *Pesticides in the Atmosphere* from the U.S. Geological Survey further support the concept that, under certain conditions, pesticides can be subject to "regional transport" over a particular area.  *See* Ex. 8.  As reflected in the accompanying visual, volatilization can lead to the formation of a pesticide cloud than can then be deposited on third-party growers or other landowners across the region.

*Common Impact*

The unique symptomology dicamba causes on grape vines is well-documented.  As seen throughout the plaintiff vineyards on the Texas High Plains, leaves that should be the size of one's hand cup and deform (reducing the plant's ability to produce energy and store carbohydrates).  A sample comparison between an undamaged vine leaf (left) and one with dicamba damage (right) is presented in Exhibit 9 below:



The Paka vineyard, along with the fifty-six other vineyard plaintiffs have shared in the same dicamba exposures and have presented with the same symptoms.  Regardless of whether one examines a vineyard to the east/west, north/south, or center of the plaintiff group, the visible symptomology (classic dicamba cupping) is similar across the board.



Ex. 10 (noting different plaintiff vineyard locations with a star).  There is simply no basis to distinguish the Paka vineyard claims from those of similarly situated plaintiff vineyards

10

in the region.  They are in the same area, have suffered the same exposures, and have incurred the same type of damage caused by the same product and negligence.

## V.    Argument

### 1.    Standard for Consideration

A plaintiff is "the master of the claim" and is free to avoid federal jurisdiction by relying exclusively on state law.  *Caterpillar v. Williams*, 482 U.S. 386, 391-99 (1987).  In assessing any effort to remove, removal statutes are to be strictly construed.  *In Re Business Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).  Any doubts about the propriety of removal are to be resolved in favor of remand.  *Central Iowa Power Co-op. v. Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

As the party seeking removal, Defendants have the burden to establish federal subject-matter jurisdiction.  *Id*.  Where a party argues diversity as a basis for federal jurisdiction, "a federal court does not have diversity jurisdiction unless there is diversity between all plaintiffs and all defendants."  *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 403-04 (8th Cir. 1977).

### 2.    Defendants Cannot Restore Complete Diversity Without Relying On The Dubious Doctrine of Fraudulent Misjoinder.

In the absence of a federal question or complete diversity (based on the shared New Jersey citizenship of plaintiff Paka and defendant BASF), Defendants are left to argue fraudulent misjoinder to (improperly) keep this case in federal court.  Unless they prevail on fraudulent misjoinder, they cannot successfully claim complete diversity among the parties.  But as the Defendants concede in their motion to sever, this doctrine is on shaky

ground, "Neither the Fifth Circuit Court of Appeals nor the Eighth Circuit Court of Appeals (where the MDL is located) have explicitly adopted *Tapscott* severance . . ."  (#2 at 5, 1:21-cv-00338).

The concept of fraudulent misjoinder was first announced by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), which applied the doctrine when the plaintiff group was comprised of two distinct sub-groups with distinct claims against unrelated defendants.  Whereas "fraudulent joinder" occurs where a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal, fraudulent misjoinder focuses on whether a plaintiff has joined a viable – but wholly unrelated – claim in one action to try to destroy diversity.  *See generally Schillachi v.* Roberts, 3:13-cv-05063-SRB, 2020 WL 4596772, at *2-3 (W.D. MO. Aug. 11, 2020).  Cases where the doctrine has been applied are typically extreme (*e.g.*, a plaintiff suing a defendant for a car crash joined with a plaintiff suing for a defective surgical implant).  *See Graham v. Mentor World Wide LLC,* 4:19-cv-01637, 2019 WL 3253185, at *5 (E.D. Mo. July 19, 2019).

The Eighth Circuit has not yet determined whether removal based on diversity of citizenship can be thwarted where there is fraudulent misjoinder.  *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 620 (8th Cir. 2010); *see Orrick v. SmithKline Beecham,* 4:13-cv-02149-SNLJ, 2014 WL 3956547, at *6 (E.D. Mo. Aug. 13, 2014) (reciting the Eighth Circuit's view of fraudulent misjoinder).  In *Prempro*, the court declined to adopt or reject the fraudulent misjoinder doctrine because it concluded that "the plaintiffs' alleged misjoinder [was] not so egregious as to constitute fraudulent misjoinder." *Prempro*, 591

F.3d at 620 (stating that fraudulent misjoinder, if accepted, would be a "novel exception to the complete diversity rule"). Even where the doctrine has been adopted, it is often this "egregiousness" that prevents application.

In this circuit, district courts typically "den[y] federal jurisdiction on the basis of fraudulent misjoinder without making a ruling on whether fraudulent misjoinder is proper legal theory." *Lafoy*, 2016 WL 2733161 at *3. This is often because courts repeatedly find in products cases (such as here) that, "the joinder of plaintiffs alleging injury from a single product is not egregious" as there are necessarily common issues of law and fact that connect the plaintiffs' product claims. *See, e.g. Reese v. Janssen Pharm, Inc.*, 2017 WL 1954635, at *4 (E.D. Mo. May 11, 2017); *Douglas v. GlaxoSmithKline, LLC*, 2010 WL 2680308, at *2 (E.D. Mo. July 1, 2010).

Even under *Tapscott*, mere misjoinder is insufficient to justify setting aside a lack of complete diversity. Only the most egregious instances of misjoinder – where wholly distinct claims lack any real connection with the controversy and the joinder borders on a sham – are sufficient to trigger fraudulent misjoinder. *See Tapcscott*, 77 F.3d at 1360. Even in jurisdictions where the *Tapscott* doctrine has been cited with approval, it is generally disfavored and should be reserved for a small handful of the most extreme cases. *See Garcia v. Tchetgen*, 3:19-cv-1476, 2019 WL 7879731, at *2 (N.D. Tex. July 22, 2019).

A full review of Defendants' citations reflects the type of extreme circumstances that range far afield from those presented here. For example, in *Accardo v. Lafayette*, 06-8568, 2007 WL 325368 (E.D. La. Jan. 30, 2007), the doctrine was applied where 18 homeowners were joined together to sue 7 different insurance companies, under different

contracts, where no single plaintiff sued more than one company.  Similarly, in *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001), the doctrine was applied where a non-diverse plaintiff suing a health care provider for how a drug was administered was joined with plaintiffs suing the manufacturer of the drug for negligent marketing.  In *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001), the court found misjoinder where plaintiffs brought different causes of action, alleging distinct injuries, from separate medicines, against separate defendants.  In *Smith v. Rotorcraft*, 07-0681, 2007 WL 1385873 (W.D. La. May 8, 2007), fraudulent misjoinder was applied where plaintiff sought to combine a negligence suit stemming form a helicopter crash with a breach of contract action against an insurance provider.  Finally, in *Palermo v. Letourneau*, 542 F. Supp. 2d 499 (S.D. Miss. 2008), the court applied the doctrine where plaintiff sought to join claims against a healthcare provider for medical malpractice with claims for slander and wrongful discharge against his employer.

**3.    Plaintiffs' joinder is not improper, let alone egregious.**

Defendants cannot show that any of the fifty-seven plaintiffs (including Paka) have been improperly joined, let alone egregiously misjoined.  As described above, each of the vineyards share common questions of law and fact arising from the same series of occurrences.  Just as this Court found in *Orrick*, "plaintiffs are each alleged to have been injured by the same product and arising from the same development, distribution, marketing, and sales practices for that product.  As a result, common questions of law and fact are likely to arise, and thus there is at least a 'palpable connection.'"  *Orrick*, 2014 WL 39556547, at \*6.  This palpable connection is all that is necessary to defeat an argument of

14

fraudulent misjoinder. *See Bienenmy v. Cont'l Cas. Co.*, No. 09-6647, 2010 WL 375213, at *4 (E.D. La. Dec. 13, 2010) ("Even courts that follow *Tapscott* have not applied that case unless the connection between the claims against the individual parties is so tenuous that disregarding the citizenship of the joined parties is just, or when there is no 'palpable connection' between the claims and the parties joined.").

Nor can it be said that joining together vineyard owners from the same locale to assert claims involving the same product constitutes a "sham."  Each plaintiff's claim shares a significant factual nexus with those of the other Texas High Plains vineyard owners (*e.g.,* same product, same exposures, same defendants) and there can be expected to be a substantial overlap in proof at trial.  This is not the case where there are two distinct classes of plaintiffs and defendants, or separate preexisting cases have been combined. There is no requisite egregiousness or gross impropriety.

Because the vineyard owners all have a common regional identity, there is a "logical relationship" that cannot and should not be disturbed.  None of the fifty-seven growers (including Paka) can be considered to be in factual, temporal, or geographic isolation from the others.  This alone is dispositive.  As the Eighth Circuit has explained, even when a party can show joinder was "motivated by a desire to defeat federal jurisdiction," this is "not material."  *Iowa Pub. Serv. Co.*, 556 F.2d at 404.

## VI.    Conclusion

Absent federal question or complete diversity, there is no basis for federal jurisdiction.  This case should be remanded back to the District Court of Jefferson County, Texas.  Plaintiffs also request all other relief to which they are entitled.

Dated:  August 2, 2021                Respectfully submitted,

/s/ *Adam M. Dinnell*

Andrew S. Hicks
TX Bar No. 24032419
Adam M. Dinnell
TX Bar No. 24055405
Marc S. Tabolsky
TX Bar No. 24037576
Katherine D. Jordan
TX Bar No. 00786005
SCHIFFER HICKS JOHNSON PLLC
700 Louisiana Street, Suite 2650
Houston, Texas 77002
Phone: 713-357-5150
Fax: 713-357-5160
ahicks@shjlawfirm.com
adinnell@shjlawfirm.com
mtabolsky@shjlawfirm.com
kjordan@shjlawfirm.com

Ted A. Liggett
TX Bar No. 00795145
Dustin R. Burrows
TX Bar No. 24048375
LIGGETT LAW GROUP PC
1001 Main Street, Suite 300
Lubbock, Texas 79401
Phone: 806-744-4878
ted@liggettlawgroup.com
dustin@liggettlawgroup.com

Andrew R. Seger
TX Bar No. 24046815
KEY TERRELL & SEGER LLP
4825 50th Street, Suite A
Lubbock, Texas 79414
Phone: 806-792-1944
aseger@thesegerfirm.com

*Attorneys for Plaintiffs*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2021, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

/s/ *Adam M. Dinnell*
Adam M. Dinnell